# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**BARRY JASON DILLON,**

     **Plaintiff,**

**vs.**                                  **CIVIL ACTION NO. 2:16-CV-04330**

**NANCY A. BERRYHILL,[1]**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

     **Defendant.**

### <u>PROPOSED FINDINGS AND RECOMMENDATION</u>

This is an action seeking review of the final decision of the Acting Commissioner of Social Security concluding that there was insufficient evidence to support a finding that the Plaintiff was disabled as of March 5, 2009, and therefore, terminating the Plaintiff's benefits. The Plaintiff applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered March 28, 2017, (Document No. 13.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) as to whether the decision to terminate the Plaintiff's benefits was based on the substantial evidence. Presently pending before the Court are the Plaintiff's Brief in Support of Motion for Summary Judgment, and the Defendant's Brief In Support of Defendant's Decision. (Document Nos. 20 and 21.)

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for summary judgment (Document No. 20.), **GRANT** Defendant's request to affirm the decision of the Commissioner (Document No. 21.); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court.

## Procedural History

The Plaintiff, Barry Jason Dillon (hereinafter referred to as "Claimant"), protectively filed his application for Title II benefits on May 8, 2008 alleging disability since June 15, 2007. (Tr. at 172-173.) His claim was initially denied on July 3, 2008 (Tr. at 105-109.) and again upon reconsideration on July 28, 2008. (Tr. at 111-113.) Claimant subsequently filed a written request for hearing on August 13, 2008. (Tr. at 114-115.) Without a hearing, David B. Daugherty, Administrative Law Judge ("ALJ") found Claimant was under a disability from June 15, 2007 by decision dated March 5, 2009. (Tr. at 89-98.)

By correspondence dated May 18, 2015, the Social Security Administration notified Claimant that his disability benefits were suspended because the Office of the Inspector General suspected fraud was involved in certain cases that included evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederick Huffnagle, M.D., or David P. Herr, D.O. (Tr. at 129-134.) Because such evidence had been submitted on Claimant's behalf by his then representative, Eric C. Conn, Claimant's entitlement to benefits had to be redetermined. (Id.)

On August 26, 2015, the Appeals Council issued its order remanding Claimant's case for redetermination before another ALJ. (Tr. at 100-104.) On December 1, 2015, an administrative hearing was held before the Honorable Jerry Faust, ALJ. (Tr. at 28-60.) On January 11, 2016, the

ALJ entered a decision finding Claimant had not been under a disability at any time from June 15, 2007 through March 5, 2009, the date of the prior decision. (Tr. at 8-27.) On February 18, 2016, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 6-7.) The ALJ's decision became the final decision of the Commissioner on March 11, 2016 when the Appeals Council denied Claimant's Request for Review. (Tr. at 3-5.)

On May 11, 2016, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 17 and 18.) Subsequently, Claimant filed his Brief in Support of Motion for Summary Judgment (Document No. 20.), and in response, the Commissioner filed a Brief in Support of Defendant's Decision. (Document No. 21.) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 44 years old on the date of the prior decision finding him disabled, and is a "younger person" by the Regulations throughout the underlying proceedings. See 20 C.F.R. § 404.1563(c). (Tr. at 20.) Claimant is a high school graduate. (Id.) Claimant last worked in April 2007 as an underground miner in a coalmine performing maintenance and repair of mining equipment when he injured his knee on the job. (Tr. at 38, 188.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of

any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**Summary of ALJ's Decision**

From the outset, the ALJ acknowledged that pursuant to Sections 205(u) and 1631(e)(7)[2] of the Social Security Act, in his redetermination of whether Claimant was entitled to benefits, he must disregard the evidence from the aforementioned medical providers, but specifically in this case, the evidence from Frederic T. Huffnagle, M.D. dated January 22, 2009. (Tr. at 11, 12, 14.) The ALJ next determined that Claimant met the insured status requirements through December 31, 2012. (Tr. at 14, Finding No. 1.) The ALJ then determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity between the alleged onset date and the date of the vacated ALJ decision. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: ulcerative colitis with subsequent proctocolectomy; right medial meniscus tear with subsequent surgical correction; disc bulge; disc disease; and obesity. (Tr. at 15, Finding No. 3.) At the third inquiry, the ALJ concluded that the severity of Claimant's impairment did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform a range of light work such that he

> could lift and carry, push and pull, 20 pounds occasionally and 10 pounds frequently. The beneficiary could sit, with normal breaks, for a total of six of eight hours per day and could stand and walk, with normal breaks, for a total of four of eight hours per day. The beneficiary could only occasionally work overhead bilaterally. The beneficiary could rarely (less than five percent of the day) use stairs. The beneficiary could not climb ladders, ropes or scaffolds. The beneficiary could not stoop (bend). The beneficiary could only occasionally kneel, crouch and crawl.

(Tr. at 16, Finding No. 5.) At step four, the ALJ found that Claimant was incapable of performing any past relevant work. (Tr. at 20, Finding No. 6.) At the final step, the ALJ found that in addition to the immateriality of the transferability of job skills, Claimant's age, education, work experience,

---

[2] This is codified as 42 U.S.C. §§ 405(u) and 1383(e)(7).

and RFC indicated that there were jobs that existed in significant numbers in the national economy that Claimant could have performed. (Id., Finding Nos. 7-10.) Finally, the ALJ determined Claimant had not been under a disability from June 15, 2007 through March 5, 2009, the date of the vacated ALJ decision. (Tr. at 21, Finding No. 11.)

## Claimant's Challenges to the Commissioner's Decision

Claimant argues the ALJ's decision is not supported by substantial evidence insofar as his reliance on evidence that appeared inconsistent, such as the RFC evaluations dated December 2007 and May 2008, which placed Claimant in the "very heavy" work category. (Document No. 20 at 2-3.) Moreover, the ALJ disregarded the opinion of Claimant's treating physician, Dr. Hegg, that limited sustained weight bearing on his right leg, while giving greater weight to the opinions provided by State agency consultants, Drs. Lim and Lambrechts who found Claimant capable of medium and light work respectively. (Id. at 3.) In essence, the ALJ fashioned his RFC assessment by choosing only that evidence that supported it, and the wording of his decision appears to discount Claimant's credibility insofar as he could have been capable of greater than light work. (Id. at 4.)

Claimant also disputes the ALJ's finding that he could have performed other work during the relevant period, as the ALJ neither adequately considered his postural limitations nor his ileostomy bag, which would have required an additional accommodation. (Id. at 5.) Claimant also disagrees with the vocational expert's suggestions of other work because those jobs would not have accommodated Claimant's impairments. (Id. at 5-6.) Claimant asks the Court to enter judgment finding him disabled during the relevant period or for such other relief as may be appropriate. (Id. at 6.)

In response, the Commissioner contends that the ALJ made the appropriate RFC assessment based on Claimant's impairments, and he noted that Claimant retained a significant functional ability after treatment of his knee and colectomy. (Document No. 21 at 9.) An evaluator opined that Claimant was capable of "very heavy" work category, though not on a daily basis. (Id.) Further, the Commissioner argues that Claimant's treating physician commented that he could work in a sedentary capacity, and that his physical examinations were generally normal. (Id. at 10.) A second functional capacity evaluator opined that Claimant retained the ability to do light work with frequent reaching overhead. (Id.)

Additionally, the Commissioner asserts that the ALJ appropriately and per his duty and discretion weighed the medical opinion evidence when he crafted Claimant's RFC, and that it was supported by the substantial evidence of record. (Id. at 11.) The statement made by Claimant's treating physician, Dr. Hegg, that Claimant remain "off work" appeared to reference a particular time, and was not a permanent condition, as Dr. Hegg also opined that Claimant could resume work, just not heavy labor. (Id.) The Commissioner also points out that assuming Dr. Hegg's opinion that Claimant remain "off work" was a statement concerning an ultimate issue conclusion, such determinations are the Commissioner's sole duty to decide. (Id.) Further, the statement referenced no explicit functional limitations, therefore it was reasonable for the ALJ to find that it pertained to Claimant's past work, though it did not corroborate the functional capacity evaluations at the time. (Id. at 11-12.) Finally, the Commissioner contends that the ALJ gave appropriate weight to the State agency medical consultants' opinions, who found Claimant capable of medium and light work, and even afforded Claimant additional limitations in his RFC than suggested by the State experts. (Id. at 12.)

With regard to the vocational expert's testimony, the Commissioner reminds the Court that only Claimant's credibly established impairments fairly set out in the hypotheticals to the vocational expert is required under this district's jurisprudence. (Id. at 12-13.) Because the substantial evidence of record supported Claimant's capacity for light work, the vocational expert identified jobs that were relevant and helpful to the ALJ's inquiries at step five of the sequential evaluation process. (Id. at 13.)

In conclusion, the Commissioner asks this Court to affirm the final decision because it is supported by substantial evidence. (Id. at 14.)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence,[4] pertaining to Claimant's arguments and discusses it below.

Claimant's Daily Activities and Statements of Functioning:

In a function report that he completed in connection with his applications, Claimant reported that his daily routine included feeding and watering his pets, watching his children until his wife returns from work, walking, driving, checking his garden, preparing simple meals, and watching television. (Tr. at 211-215.) He also reported that he was able to lift between 11 to 40 pounds. (Tr. at 215.)

Medical Evidence:

On June 18, 2007, Claimant had a surgical repair of his medial meniscus by his treating physician, Dr. Kyle Hegg. (Tr. at 250-251.) At the post-operative appointment, Dr. Hegg

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.
[4] The medical evidence referenced herein is the evidence from the relevant period.

recommended that Claimant have physical therapy and noted that the "wounds are satisfactory" and that Claimant exhibited a normal gait. (Tr. at 501, 503.)

In September 2007, Claimant underwent treatment for ulcerative colitis. (Tr. at 257-258.) He had been complaining of a number of symptoms, including diarrhea, abdominal pain and fever. (Id.) His physical examination revealed mild-to-moderate abdominal tenderness with guarding to deep palpation in the lower quadrant. (Tr. at 258.) Claimant was then admitted to the hospital for approximately three days for treatment. (Tr. at 259.) He then underwent a surgical proctocolectomy. (Tr. at 281.) By October 2007, records show that Claimant's surgical wounds had been healing well and he was tapering off medications. (Tr. at 736.) It was further noted that Claimant would need to work with a stomal therapist to achieve better results with his ileostomy bag. (Id.)

In November 2007, Dr. Hegg noted that Claimant had a normal gait and full musculoskeletal range of motion. (Tr. at 419.) Claimant had minimal tenderness at the wound site from his proctocolectomy procedure, and his neurological examination was normal. (Id.)

Claimant's December 20, 2007 functional capacity evaluation showed good success after two months of physical therapy for his knee. (Tr. at 321-324.) The evaluator noted that Claimant had been ready to return to work, until the need for his proctocolectomy. (Tr. at 321.) The evaluator further noted that after the surgery, Claimant returned to physical therapy and showed "significant improvement", though he had "general muscle weakness." (Id.) Claimant's range of motion was within normal limits. (Tr. at 322.) The evaluator determined that Claimant "completed a valid test" and was able to lift in the "very heavy" category, but not on a daily basis. (Tr. at 324.)

Claimant participated in work hardening and conditioning from December 26, 2007 –

February 12, 2008. (Tr. at 763.) Dr. Hegg stated on February 13, 2008 Claimant would be "off work" until the next office visit. (Tr. at 765.) Nevertheless, Dr. Hegg's own treatment notes from February 13, 2008 reflected that Claimant was overall "rehabbing well", but he did not believe that Claimant would realistically be able to perform heavy laboring employment; instead he will "likely have to be restricted to more sedentary employment or work in situations that do not require repetitive kneeling squatting and climbing." (Tr. at 417-418.) If this type of work was available, Dr. Hegg opined "he could resume working." (Tr. at 418.) Claimant was approved for three Synvisc injections to his right knee. (Tr. at 417.) When Claimant saw Dr. Hegg again on February 29, 2008, and had a normal gait, intact pulses, no erythema, and no effusion, though there was crepitus in the right knee. (Tr. at 415.)

With regard to his abdominal issues, on March 7, 2008 Claimant presented with severe left flank pain due to a kidney stone, which later subsided to only mild left flank pain. (Tr. at 309). Claimant had been to the hospital just two and a half weeks earlier, believing that he would pass the stone and had experienced very little pain in between hospital visits, however, the stone's position remained essentially unchanged necessitating removal on March 10, 2008. (Tr. at 310-311.) At the time, Claimant denied any "real discomfort" other than the dull flank discomfort, and he tolerated the removal procedure well. (Tr. at 309, 311.)

On March 20, 2008, Claimant had a minimally antalgic gait on the right. (Tr. at 411.) During an impairment rating evaluation performed by Dr. Bruce Guberman on April 2, 2008, Claimant had some moderate crepitation in the knee, but there was no redness, warmth, or swelling. (Tr. at 518.) Claimant had increased pain with squatting; remained neurologically intact; had intact sensation with normal reflexes and could walk on his heels and toes and squat, with only

mild difficulty. (Id.) Dr. Guberman's assessment was chronic post-traumatic stress of the right knee. (Tr. at 519.)

When Claimant returned to see Dr. Hegg on April 15, 2008, he maintained a full range of knee motion, with some mild tenderness. (Tr. at 409, 879.) Claimant continued to receive knee injections and to perform physical therapy exercises at home. (Id.) Dr. Hegg advised the rehabilitation specialist that Claimant would be limited to "sustained weight-bearing on the right leg (that is, carrying, squatting with loads, etc.)". (Tr. at 441.) However, Dr. Hegg commented that he did not believe that Claimant could return to his previous laboring employment, but he should be considered for retraining into more sedentary employment. (Tr. at 409, 879.)

Clamant underwent another functional capacity evaluation on May 6, 2008 to determine his ability to perform the duties of a mine mechanic. (Tr. at 636-638.) The evaluator indicated that Claimant could perform lifting activities in the "light" category. (Id.) No limitations with handling, fingering dexterity, or reaching in immediate or overhead planes were noted. (Tr. at 637.)

Dr. Hegg requested insurance authorization for a series of knee injections in January 2009, which would have "some potential to improve" his symptoms. (Tr. at 936.) Dr. Hegg noted that Claimant was making efforts to resume working. (Id.) On April 28, 2009, Claimant reported that his knee was "better" with the Synvisc injections. (Tr. at 853.) Dr. Hegg again opined that Claimant needed to be retrained for more sedentary type employment. (Id.)

State Agency Medical Consultants:

On July 1, 2008, Rogelio Lim, M.D. reviewed the evidence of record and opined that Claimant would be capable of medium exertion work, and could frequently perform all postural movements, with the exception of only occasional climbing ramps and stairs. (Tr. at 660-667.)

Additionally, Dr. Lim opined that Claimant must avoid concentrated exposure to vibration. (Tr. at 664.) On July 24, 2008, Marcel Lambrechts, M.D. noted a new RFC was necessary as Dr. Lim "missed the latest report" that concerned Claimant's ulcerative colitis. (Tr. at 668.) Thereafter, on July 28, 2008, Dr. Lambrechts reviewed the record and opined that Claimant was limited to light exertional activity, and could only occasionally perform postural movements. (Tr. at 669-676.) Dr. Lambrechts further opined that Claimant must avoid concentrated exposure to heat/cold, vibration, fumes, and hazards. (Tr. at 673.)

**The Administrative Hearing**

Claimant Testimony:

At his redetermination hearing, Claimant elected to proceed without obtaining a representative. (Tr. at 32.) Claimant understood that the purpose of the hearing was to determine if he was disabled from June 15, 2007 through March 5, 2009, the date of the previous ALJ decision. (Tr. at 33, 34.)

Claimant confirmed that he drove during the relevant period, but only locally, around 10 to 15 miles. (Tr. at 35.) Before his injury, he worked in the coalmines as a roof bolter, a continuous miner, and did some mechanical repairing. (Tr. at 37.) Claimant testified that he hurt his knee in the mines in 2007 and then suffered from colitis shortly afterwards; he stated that he had a difficult time getting his colostomy to attach properly, and he would have it burst on him yearly and leave a mess. (Tr. at 38-39.)

Claimant testified that a rock fell on his back in 1991; he went back to work after a few days, but stated that during the relevant period, his back pain would run down his leg and into his groin. (Tr. at 41.) He stated that he has this pain on a daily basis. (Id.)

Claimant stated that he could not return to work in the coalmines, but there was not much opportunity around his house for other work. (Tr. at 42.) After he recovered from his knee and colon issues, Claimant testified that Dr. Hegg placed restrictions on him that he was to avoid ladders, stairs, steps, but no restrictions with regard to lifting or carrying. (Tr. at 43-44.)

Claimant testified that he did not do any housework, except maybe the dishes; he would cut his lawn with a riding mower; watched T.V.; visit people he knew or his father; and rabbit hunt a little bit. (Tr. at 44-45.) He could no longer deer hunt due to his worry of catching the ostomy with the bowstring. (Tr. at 45.)

As for pain, Claimant testified that if he bumps his stoma, it was very painful; his knee pain is daily, and though the injections helped the pain tremendously, his workers compensation would no longer pay for them. (Id.) Claimant testified that nothing would really bring the pain on, but bending over or sitting a certain way would make the pain worse. (Tr. at 46.) Hot showers, a heating pad, and laying down helps relieve his pain. (Id.) Also during the relevant period, Claimant stated that his intestines would stop up, but the only remedy was for him to drink liquids to loosen them up. (Tr. at 50-51.)

Claimant estimated that during the relevant period he could walk up to a quarter of a mile, stand for about 30 minutes and maybe sit for 15 minutes before having to get up. (Tr. at 47.) Claimant stated that he could drive, but because of his shoulder, he would have to sit close to the steering wheel, though he had no trouble with the gas or brake pedal. (Tr. at 47-48.) Trying to keep his colostomy bag on during the summer was a daily problem due to the humidity; he would also get irritations from it during the warmer months. (Tr. at 48-49.) He used to favor sleeping on his

stomach, but can no longer do so because of the ostomy, but sleeping on his back is not comfortable due to his back pain. (Tr. at 49.)

Mitchell Veeder, Vocational Expert ("VE") Testimony:

The VE classified Claimant's job as a roof bolter as medium work; the continuous mining machine operator job as medium, but as performed by Claimant as very heavy; and the mechanic job as medium, but as performed as very heavy. (Tr. at 54-55.) The ALJ then asked the VE to assume an individual of Claimant's age, education, and past work experience who could lift and carry, push and pull 20 pounds occasionally, 10 pounds frequently; sit with normal breaks for six of eight hours a day and stand or walk with normal breaks for six of eight hours a day; occasionally reach overhead bilaterally; rarely use stairs; could not climb ladders, ropes or scaffolds; and rarely stoop; occasionally kneel, crouch, and crawl. (Tr. at 55.) The VE responded that such an individual could not perform past work generally or as performed, but could perform work as a fast food worker, cashier II or power screwdriver operator, all light jobs. (Tr. at 55-56.) However, if such an individual were to avoid stooping or bending, the fast food worker job would be eliminated. (Tr. at 56.)

The ALJ asked another hypothetical, where the individual could not stoop, but also could only stand or walk four hours out of eight hours a day. (Tr. at 57.) The VE testified that the remaining light jobs would be eliminated, but sedentary jobs including document preparer or scanner, surveillance system monitor, and escort vehicle driver would be available for such an individual. (Tr. at 57-58.) The VE explained further that the sedentary jobs he identified would not require the individual to lift or carry more than 10 pounds occasionally, or stand or walk more than two hours. (Tr. at 58.) The VE also testified that if the individual would be off task 15% of the

workday or work week to attend to his colostomy, then the individual would not be employable. (Id.) In the VE's personal and professional experience, the cutoff point of being off task would be 10% for an individual to remain potentially employable. (Tr. at 58-59.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As stated above, Claimant asserts that the ALJ's RFC assessment was comprised of picking and choosing the portions of evidence that supported it, and gave greater weight to the opinions of non-examining State agency medical experts over his treating physician's opinion. (Document No.

20 at 4.)

<u>The RFC Assessment:</u>

Residual functional capacity represents the *most* that an individual can do despite his limitations or restrictions. <u>See</u> Social Security Ruling 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. § 404.1545(a). The RFC determination is an issue reserved to the Commissioner. <u>See</u> <u>Id</u>. § 404.1527(d).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

<u>Diaz v. Chater</u>, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

Following the discussion of the medical evidence regarding Claimant's impairments, his allegations and testimony of same, and the evaluation of the opinion evidence, the ALJ summarized the RFC assessment as described *supra*. Of importance here is that the ALJ noted that the objective medical evidence of record did not corroborate Claimant's alleged limitations. For instance, the ALJ acknowledged that Claimant's most recent functional capacity evaluation in May 2008 "indicated [Claimant] could perform lifting activities within the 'light' category." (Tr. at 18, 636-638, 968.) Despite Claimant's alleged chronic knee pain, the records suggested the injections he received were effective in managing his pain. (Tr. at 18, 936.) In addition, the ALJ noted the May 2008 evaluation limited Claimant's overhead reaching to frequently, and even though the

ALJ further noted there was "not a great deal of information regarding any condition associated with shoulder pain, the undersigned has viewed the evidence in a light favorable to the beneficiary in finding limitations of overhead reaching." (Tr. at 18, 636-638.) With respect to Claimant's colectomy bag, the ALJ noted that the record did not support Claimant's statements that he had significant issues with it, specifically, that it would burst if he bent over, nevertheless, the ALJ "provided limitations in regards to stooping (bending) to account for any difficulty of this nature." (Tr. at 16, 18.)

In reconciling the functional capacity evaluations, the Regulations have vested an ALJ with the duty and discretion to accord weight to the medical opinions contained within them. See 20 C.F.R. §§ 404.1527(a)(2), (c)(2)-(6). The Regulations provide that an ALJ must analyze and weigh all the evidence of record, taking into account several factors including: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Id. § 404.1527(c)(2)-(6). Under § 404.1527(c)(1), more weight is given to a physician who examines a claimant than to a non-examining physician.

In this case, the ALJ expressly gave "great weight" to the December 2007 functional capacity evaluation where the examiner "stated there were doubts as to the beneficiary's ability to do [heavy exertional activity] on a day-to-day basis." (Tr. at 18, 324, 828.) The ALJ further stated "[i]n that respect, it is more consistent with the record and supports the [RFC]." (Tr. at 19.) The ALJ also explicitly gave "significant weight" to the statements made in the May 2008 evaluation, specifically with regard to Claimant's limitation to frequent overhead reaching and other postural

limitations.[5] (Id.) Indeed, based on the additional evidence obtained after this assessment, the ALJ, in accordance to his discretion and sole duty, "simply limited these further." (Id.)

There is no dispute that the ALJ gave Dr. Hegg's opinion "little weight" that Claimant "would be limited in terms of sustained weight-bearing on the right leg" and that he would be " 'off work' until the next office visit." (Tr. at 19, 441, 789, 791-792.)[6] The ALJ found that "these statements appear to pertain only to a particular time and not going forward." (Tr. at 19.) Moreover, the ALJ determined the statement that Claimant remaining "off work" "is not only a conclusion on the ultimate issue, which is reserved to the Commissioner (20 CFR 404.1527(e), 416.927(e) and Social Security Ruling 96-5p), but seems to be referencing only past work and does not provide specific limitations." (Id.) The ALJ also found that it was inconsistent with both functional capacity evaluations. (Id.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(c)(2). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 404.1527(c)(2).

---

[5] The undersigned notes that the ALJ referenced "Exhibit B8F/1" (Tr. at 312, 809.), although that document appears to be dated February 20, 2008, and indicated at the time that Claimant was capable of "very heavy" physical demand rating, with further limitations to frequent overhead and forward reaching and occasional kneeling and crawling. The document is also stamped "May 22, 2008 DDS-Chas." (Tr. at 312.)

[6] The undersigned notes that these documents were dated April 2008.

The Regulations further provide that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id.

The ALJ's interpretation of Dr. Hegg's statements was appropriate, particularly in light of the medical evidence of record, which included Dr. Hegg's repeated opinions in his treatment record that Claimant would be more suited for sedentary work and was therefore not totally disabled. In short, the ALJ's evaluation of Dr. Hegg's statements was proper, compliant with the Regulations, and he gave "good reasons" for the little weight he afforded those statements.

With regard to the State agency expert opinion evidence, the ALJ gave Dr. Lim's opinion "significant weight" with respect to his finding Claimant capable of medium exertional work because it also includes light work "absent special circumstances." (Id.) On the other hand, the ALJ gave "little weight" to Dr. Lim's opinion that Claimant would need to avoid vibration due to it being "unclear why" the need for that limitation. (Id.) Nevertheless, the ALJ "found that further limitation was necessary" than those provided by Dr. Lim. (Id.) The ALJ afforded Dr. Lambrechts's opinion "greater weight" than Dr. Lim's opinion, to the extent that Claimant would have been capable of light exertional activity and reduced his postural movements to "occasionally"; the ALJ explained that Dr. Lambrecht's opinion "is more consistent with the record as a whole." (Tr. at 19-20.) However, the ALJ again found the State agency expert provided no reason why Claimant needed to avoid cold, heat, vibration, pulmonary irritants and hazards, as the record did not support such limitations, including the functional capacity evaluations. (Tr. at 20.) Again, the ALJ found that Claimant required additional limitations than suggested by Dr. Lambrechts, such as further reduction of postural movements, further limitation for overhead reaching and others, and "[i]n that sense, the opinion cannot be given great weight." (Id.) The ALJ

provided a thorough explanation for the weights he accorded the opinions of the State agency medical consultants, further, his evaluation of the opinion evidence complied with the pertinent Regulations.

Though Claimant does not explicitly contest the ALJ's credibility analysis, however, he takes issue with the written decision: "the ALJ worded his decision in a manner that called to question Mr. Dillon's credibility and seemed to favor the medium to heavy RFC evaluations that he chose to give great weight to[.]" (Document No. 20 at 4.) The discussion *supra*, does not lend merit to this particular argument, as the ALJ explicitly determined that Claimant's RFC was limited to ***light work***. Further, the ALJ expressly detailed which statements from the functional capacity evaluations he credited with more weight and little weight, and provided reasons why he did so. Despite Claimant's consternation with the ALJ's " 'pick and choose' method" in giving differing weights to different statements, this is within the ALJ's discretion pursuant to the aforementioned Regulations.

In sum, the RFC assessment accounted for Claimant's physical impairments and included the required narrative discussion that allows for meaningful judicial review and with respect to the findings of fact and conclusions provided in the written decision, it is clear that the ALJ complied with the mandate to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). Further, it is well known that the ALJ has a duty to reconcile conflicting evidence, not this Court. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Accordingly, the undersigned **FINDS** that the ALJ's RFC determination and his evaluation of the opinion evidence were based on substantial evidence. The undersigned further **FINDS** Claimant's concerns regarding his

credibility with respect to the various functional capacity evaluations are unavailing and without merit.

The Step Five Determination:

Claimant admits "there is some evidence that points to these conclusions" reached in the RFC, but again raises the issue that the ALJ relied upon inconsistent functional capacity evaluations. (Document No. 20 at 5.) Having already found that the ALJ appropriately and adequately explained his reasoning for the weights afforded to the differing opinions contained in the functional capacity evaluations, the undersigned **FINDS** this argument duplicative and without merit. Moreover, the undersigned **FINDS** Claimant's contention that the ALJ "glossed over the reported and potential problems resulting from [Claimant's] permanent ileostomy bag" (Id.) is also without merit because the ALJ explicitly made an accommodation for this impairment despite finding a lack of objective evidence to support these allegations: "The beneficiary could not stoop (bend)." (Tr. at 16, 18.) Finally, the undersigned also **FINDS** Claimant's argument that the ALJ ignored his limitation of postural movements without merit, as the substantial evidence supported the RFC assessment.

Claimant reprises his allegations of more disabling and limiting physical impairments with regard to the vocational expert's testimony that he could perform the jobs identified at the hearing. The ALJ need only to pose hypothetical questions incorporating those limitations that he accepts as credible and that are supported by the record. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) In this case, the ALJ determined that the limitations found by the State agency medical consultants, in the functional capacity evaluations, and even by Claimant's own testimony as noted *supra*, were supported by the credible evidence and accordingly, posed the corresponding hypothetical questions to the vocational expert. (Tr. at 20-21.) Of significance here, is that not only

was Claimant found capable of light work, but also of sedentary work. (Tr. at 21.) Perhaps of greater significance is the fact that Claimant's treating physician, Dr. Hegg, repeatedly found him capable of sedentary employment and opined that vocational retraining would have been appropriate, and pursuant to the Medical-Vocational Guidelines, Rule 201.28[7], Claimant is "not disabled."

Accordingly, the undersigned **FINDS** that the ALJ's conclusions at step five of the sequential evaluation process is supported by substantial evidence, and further **FINDS** that the decision finding Claimant was not entitled to disability benefits during the relevant period, and thereby terminated, is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** Claimant's request for summary judgment (Document No. 20.), **GRANT** the Defendant's request to affirm the decision below (Document No. 21.), and **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings

---

[7] Pursuant to Rule 201.28, a younger individual aged 18-44, having a high school education or more, with previous work experience classified as skilled or unskilled and that said skills are not transferrable directs entry of a decision "not disabled." Pursuant to Rule 201.27, such an individual with a previous work experience classified as "unskilled or none" directs entry of a decision "not disabled."

and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: August 17, 2017.

Omar J. Aboulhosn
United States Magistrate Judge